1  BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
   Alan R. Plutzik (Bar No. 077785)
2  L. Timothy Fisher (State Bar No. 191626)
   Kathryn A. Schofield (Bar No. 202939)
3  2125 Oak Grove Road, Suite 120
   Walnut Creek, California  94598
4  Telephone:  (925) 945-0200
   Facsimile:  (925) 360-8792
5
   SCHIFFRIN & BARROWAY LLP
6  Eric L. Zager
   Sandra G. Smith
7  Robin Winchester
   280 King of Prussia Road
8  Radnor, PA  19087
   Telephone:  (610) 667-7706
9  Facsimile:  (610) 667-7056

10  *Attorneys for Plaintiff*

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14  NICHOLAS KARANT and ALECTA          Case No. C06-04128 JF
    PENSIONSFÖRSÄKRING, ÖMSESIDIGT,
15  Derivatively on Behalf of Nominal Defendant   **AMENDED DERIVATIVE**
    APPLE COMPUTER, INC.,               **COMPLAINT**
16
                         Plaintiff,
17
            v.
18
    STEVEN P. JOBS, MICHAEL H. SPINDLER,
19  IAN DIERY, JAMES J. BUCKLEY, DANIEL
    L. EILERS, G. FREDERICK FORSYTH, FRED
20  D. ANDERSON, GUERRINO DE LUCA,
    JONATHAN RUBINSTEIN, ROBERT
21  CALDERONI, MITCHELL MANDICH,
    TIMOTHY D. COOK, RONALD B.
22  JOHNSON, AVADIS TEVANIAN, JR.,
    JEROME B. YORK, WILLIAM V.
23  CAMPBELL, ARTHUR D. LEVINSON, and
    MILLARD DREXLER,
24
                         Defendants,      **JURY TRIAL DEMANDED**
25       and

26  APPLE COMPUTER, INC.

27                  Nominal Defendant.
    _____
28
    AMENDED DERIVATIVE COMPLAINT
    CASE NO. C06-04128 JF
    48442

1    Plaintiffs, by their attorneys, submit this Amended Derivative Complaint (the "Complaint")

2    against the defendants named herein.

3                    ## NATURE AND SUMMARY OF THE ACTION

4    1.    This is a shareholder's derivative action brought for the benefit of nominal

5    defendant Apple Computer, Inc. ("Apple" or the "Company") against certain members of its Board

6    of Directors (the "Board") and certain of its executive officers seeking to remedy defendants'

7    breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

8    2.    In gross breach of their fiduciary duties as officers and/or directors of Apple, the

9    Individual Defendants (as defined herein) colluded with one another to:

10   (a)    improperly backdate dozens of grants of Apple stock options to Apple Chief

11          Executive Officer Steven P. Jobs and several other Apple executives, in violation of

12          the Company's shareholder-approved stock option plans;

13   (b)    improperly record and account for the backdated stock options, in violation of

14          Generally Accepted Accounting Principles;

15   (c)    improperly take tax deductions based on the backdated stock options, in violation of

16          Section 162(m) of the Internal Revenue Code; and

17   (d)    produce and disseminate to Apple shareholders and the market false financial

18          statements and other SEC filings that improperly recorded and accounted for the

19          backdated option grants and concealed the improper backdating of stock options.

20   3.    As a result of the Individual Defendants' egregious misconduct, Apple has sustained

21   millions of dollars in damages including costs and expenses incurred in connection with the

22   Company's restatement of historical financial results, and Jobs and the other recipients of the

23   backdated stock options have garnered millions of dollars in unlawful profits.

24                          ## JURISDICTION AND VENUE

25   4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

26   Complaint states a federal question. This Court has supplemental jurisdiction over the state law

27   claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer

28   jurisdiction on a court of the United States which it would not otherwise have.

AMENDED DERIVATIVE COMPLAINT
48442

1        5.    Venue is proper in this district because a substantial portion of the transactions and

2    wrongs complained of herein, including the defendants' primary participation in the wrongful acts

3    detailed herein, occurred in this district.  One or more of the defendants either resides in or

4    maintains executive offices in this district, and defendants have received substantial compensation

5    in this district by engaging in numerous activities and conducting business here, which had an

6    effect in this district.

7    <center>**PARTIES**</center>

8        6.    Plaintiff Nicholas Karant is, and was at all relevant times, a shareholder of nominal

9    defendant Apple.

10       7.    Plaintiff Alecta pensionsförsäkring, ömsesidigt is, and was at all relevant times, a

11   shareholder of nominal defendant Apple.

12       8.    Nominal defendant Apple is a California corporation with its principal executive

13   offices located at 1 Infinite Loop, Cupertino, California 95014.  According to its public filings,

14   Apple and its subsidiaries design, manufacture, and market personal computers and related

15   software, services, peripherals, and networking solutions.  The Company also designs, develops,

16   and markets a line of portable digital music players along with related accessories and services

17   including the online distribution of third-party music, audio books, music videos, short films, and

18   television shows.

19       9.    Defendant Steven P. Jobs ("Jobs") has served as the Company's Chief Executive

20   Officer since 2000, and served as Interim Chief Executive Officer from 1997-2000.  Jobs also

21   served in various capacities since he co-founded the Company in 1976 to 1985.  Jobs has also

22   served as a director since August 1997.

23       10.    Defendant Michael H. Spindler ("Spindler") served as the Company's Chief

24   Executive Officer from June 1993 to February 1996, and as President from November 1990 to

25   February 1996.  Spindler also served as the Company's Chief Operating Officer and Executive

26   Vice President from January 1990 to June 1993, as Senior Vice President from February 1989 to

27   January 1990, as President, Apple Europe, from August 1988 to about January 1990, as Senior

28   Vice President, Apple Europe Division, from April 1988 to August 1998, as Senior Vice President,

---

AMENDED DERIVATIVE COMPLAINT                         2
48442

International, from January 1988 to April 1998, as Senior Vice President, International Sales and Marketing, from November 1986 to January 1988, as Vice President, International, from February 1985 to November 1986, as Vice President and General Manager, Europe, from January 1984 to February 1985, and as European Marketing Manager from September 1980 to January 1984. Spindler also served as a member of the Company's Board of Directors from January 1991 to February 1996.

11.    Defendant Ian Diery ("Diery") served as the Company's Executive Vice President and General Manager, Computer Division from July 1993 to April 1995.  Diery also served as Executive Vice President, Worldwide Sales and Marketing from July 1992 to July 1993, and as Senior Vice President of Apple and President, Apple Pacific Division from October 1989 to July 1992.

12.    Defendant James J. Buckley ("Buckley") served as the Company's Senior Vice President and President, Apple USA from January 1994 to May 1996.  Buckley also served as the Company's Vice President and General Manager, Higher Education Division from April 1992 to January 1994, as Vice President, Northern Operations from May 1991 to April 1992, Vice President, Central Operations from April 1988 to May 1991, as Area Director, North Central Area from May 1986 to April 1988, as Director of K-12 and Higher Education Sales from January 1986 to May 1986, and as K-12 and Higher Education Sales Manager from May 1985 to January 1986.

13.    Defendant Daniel L. Eilers ("Eilers") served as the Company's Senior Vice President, Worldwide Marketing and Customer Solutions from March 1991 to December 1995. Eilers also served as the Company's Vice President, Strategy and Corporate Development from 1989 to March 1991, as Vice President, Strategic Investments from November 1987 to 1989, as Director of Strategic Investments from 1986 to November 1987, as Assistant Treasurer from 1984 to 1986, and as a software product manager from June 1982 to 1984.

14.    Defendant G. Frederick Forsyth ("Forsyth") served as the Company's Senior Vice President, Worldwide Operations from June 1993 to February 1998.  Forsyth also served as the Company's Senior Vice President and General Manager, Macintosh Systems Division from April 1991 to June 1993, as Senior Vice President, Worldwide Manufacturing from November 1990 to

April 1991, and as Vice President, Worldwide Manufacturing, Apple Products Division from June 1989 to November 1990.

15.    Defendant Fred D. Anderson ("Anderson") served as the Company's Executive Vice President and Chief Financial Officer from April 1996 to June 2004.  Anderson has also served as a director since June 2004.

16.    Defendant Guerrino De Luca ("De Luca") served as the Company's Senior Vice President from 1996 to October 1997.  De Luca also served in various capacities with the Company since 1989, including President of Claris Corporation, Apple's subsidiary, from 1995 to 1996, Vice President of Marketing and Sales for the Company's software division in 1994, Vice President and General Manager of the Personal Interactive Electronics Group for Apple Europe in 1993, and Vice President, Marketing, for Apple Europe in 1992.

17.    Defendant Jonathan Rubinstein ("Rubinstein") served as the Company's Senior Vice President, iPod Division from May 2004 to March 2006.  Rubinstein also served as the Company's Senior Vice President, Hardware Engineering from February 1997 to May 2004.

18.    Defendant Robert Calderoni ("Calderoni") served as the Company's Senior Vice President of Finance from June 1996 to November 1997.

19.    Defendant Mitchell Mandich ("Mandich") served as the Company's Senior Vice President, Worldwide Sales from at least December 1997 to October 2000.  Mandich also served as the Company's Vide President, North American Business Division from February 1997 to, at the latest, December 1997.

20.    Defendant Timothy D. Cook ("Cook") has served as the Company's Chief Operating Officer since October 2005.  Cook also served as the Company's Executive Vice President, Worldwide Sales and Operations from January 2002 to October 2005, and as Senior Vice President, Worldwide Operations from February 1998 to January 2002.

21.    Defendant Ronald B. Johnson ("Johnson") has served as the Company's Senior Vice President, Retail since at least September 2001.  Johnson also served as the Company's Senior Vice President, New Business Development from January 2000 until, at the latest, September 2001.

1       22.    Defendant Avadis Tevanian, Jr. ("Tevanian") served as the Company's Senior Vice

2    President, Chief Software Technology Officer from July 2003 to March 2006. Tevanian also

3    served as the Company's Senior Vice President, Software Engineering from February 1997 to July

4    2003.

5       23.    Collectively, defendants Jobs, Spindler, Diery, Buckley, Eilers, Forsyth, Anderson,

6    De Luca, Rubinstein, Calderoni, Mandich, Cook, Johnson, and Tevanian are referred to herein as

7    the "Officer Defendants."

8       24.    Defendant William V. Campbell ("Campbell") has served as a director of Apple

9    since August 1997. Campbell has also served as a member of the Audit and Finance Committee of

10    the Board ("Audit Committee") since August 1997 and as a member of the Compensation

11    Committee of the Board ("Compensation Committee") since August 2001. Campbell was also a

12    member of the Board from April 2000 to August 2001, when the Board administered the

13    Company's executive compensation program.

14       25.    Defendant Arthur D. Levinson ("Levinson") has served as a director of Apple since

15    2000. Levinson has also served as a member of the Audit Committee since fiscal 2000, and as a

16    member of the Compensation Committee from August 2001 to fiscal 2003. Levinson was also a

17    member of the Board from April 2000 to August 2001, when the Board administered the

18    Company's executive compensation program.

19       26.    Defendant Jerome B. York ("York") has served as a director of Apple since August

20    1997. York has also served as a member of the Audit Committee since August 1997, and as a

21    member of the Compensation Committee from August 2001 to in or about fiscal 2002. York was

22    also a member of the Board from April 2000 to August 2001, when the Board administered the

23    Company's executive compensation program.

24       27.    Collectively, defendants Campbell, Levinson, and York are referred to herein as the

25    "Audit Committee Defendants."

26       28.    Defendant Millard Drexler ("Drexler") has served as a director of Apple since 1999.

27    Drexler has also served as a member of the Compensation Committee since fiscal 2002, and was a

28

1    member of the Board from April 2000 to August 2001, when the Board administered the

2    Company's executive compensation program.

3         29.    Collectively, defendants Campbell, Drexler, Levinson, and York are referred to

4    herein as the "Compensation Committee Defendants."

5         30.    Collectively, the Officer Defendants, Compensation Committee Defendants, and

6    Audit Committee Defendants are referred to herein as the "Individual Defendants."

7                    **DUTIES OF THE INDIVIDUAL DEFENDANTS**

8         31.    By reason of their positions as officers and/or directors of the Company and because

9    of their ability to control the business and corporate affairs of the Company, the Individual

10   Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

11   loyalty, and due care, and were and are required to use their utmost ability to control and manage

12   the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are

13   required to act in furtherance of the best interests of the Company and its shareholders so as to

14   benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each

15   director and officer of the Company owes to the Company and its shareholders the fiduciary duty

16   to exercise good faith and diligence in the administration of the affairs of the Company and in the

17   use and preservation of its property and assets, and the highest obligations of fair dealing.

18        32.    The Individual Defendants, because of their positions of control and authority as

19   directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise

20   control over the wrongful acts complained of herein.

21        33.    To discharge their duties, the officers and directors of the Company were required to

22   exercise reasonable and prudent supervision over the management, policies, practices and controls

23   of the Company.  By virtue of such duties, the officers and directors of the Company were required

24   to, among other things:

25        (a)    exercise good faith in ensuring that the affairs of the Company were conducted in an

26                efficient, business-like manner so as to make it possible to provide the highest

27                quality performance of its business;

28

AMENDED DERIVATIVE COMPLAINT                                                          6
48442

(b)    exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

(c)    exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

(d)    exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e)    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

34.    The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

(1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

    (a)    transactions are executed in accordance with management's general or specific authorization;

    (b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

35. Apple's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

(a) Reviewing with Management and the independent auditor:

- The Corporation's annual audited financial statements, and related footnotes, and quarterly unaudited financial statements, including the disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing the Corporation's Annual Report on Form 10-K and Quarterly Reports on Form 10-Q, respectively, with the SEC;
- The independent auditors' audit of the annual financial statements and their report thereon;
- The accompanying Management Letter and any reports with respect to interim periods;

(b) Discussing with the independent auditors the financial statements and audit findings, including any significant adjustments, Management judgments and accounting estimates, significant new accounting policies and disagreements with Management and any other matters described in SAS No. 61, as may be modified or supplemented; and

(c) Inquiring about the application of the Corporation's accounting policies and its consistency from period to period, and the compatibility of these accounting policies with Generally Accepted Accounting Principles, and, when applicable, the provisions for future occurrences that may have a material impact on the financial statements of the Corporation.

## **FACTUAL ALLEGATIONS**

### **Stock Option Grants to the Officer Defendants**

36. At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Apple and administered the Company's stock option plans.

37.     From 1993 to 2001, the Compensation Committee granted certain Apple stock options to the Officer Defendants, as follows:

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|-------------------------|----------------|-------------------|
| Jobs | 1/12/00 | $43.5938 | 20,000,000 |
| | 10/19/01 | $18.30 | 7,500,000 |
| Anderson | 4/1/96 | $24.56 | 400,000 |
| | 7/11/97 | $13.25 | 500,000 |
| | 8/5/97 | $19.75 | 250,000 |
| | 12/19/97 | $13.6875 | 250,000 |
| | 3/2/99 | $34.625 | 475,000 |
| | 1/17/01 | $16.8125 | 1,000,000 |
| Diery | 10/12/93 | $23.75 | 40,000 |
| | 12/20/93 | $29.50 | 90,000 |
| Buckley | 10/12/93 | $23.75 | 15,000 |
| | 12/20/93 | $29.50 | 30,000 |
| | 1/26/94 | $33.875 | 20,000 |
| | 4/27/95 | $38.25 | 200,000 |
| Spindler | 10/13/93 | $24.00 | 200,000 |
| Eilers | 10/3/94 | $33.69 | 200,000 |
| | 4/27/95 | $38.25 | 60,000 |
| Forsyth | 4/27/95 | $38.25 | 40,000 |
| De Luca | 7/11/97 | $13.25 | 309,750 |
| | 8/5/97 | $19.75 | 190,250 |
| Rubinstein | 7/11/97 | $13.25 | 200,000 |
| | 8/5/97 | $19.75 | 300,000 |
| | 12/19/97 | $13.6875 | 300,000 |
| | 3/2/99 | $34.625 | 458,334 |
| | 1/17/01 | $16.8125 | 1,000,000 |
| Calderoni | 8/5/97 | $19.75 | 80,000 |
| Mandich | 12/19/97 | $13.6875 | 224,250 |
| | 12/29/97 | $13.125 | 200,000 |
| | 3/2/99 | $34.625 | 387,876 |

AMENDED DERIVATIVE COMPLAINT
48442

9

| | | | |
|---|---|---|---|
| Cook | 2/2/98 | $17.6875 | 700,000 |
| | 3/2/99 | $34.625 | 300,000 |
| | 1/17/01 | $16.8125 | 1,000,000 |
| Johnson | 12/14/99 | $47.4375 | 1,200,000 |
| Tevanian | 1/17/01 | $16.8125 | 1,000,000 |

38.     Pursuant to the terms of the Company's shareholder-approved stock option plans, before fiscal 1998, the exercise price of the options must be no less than the closing price of Apple stock on the business day immediately preceding the date of grant.  After fiscal 1998, the exercise price of options must be no less than the closing price of Apple stock on the date of grant.

39.     Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

40.     Pursuant to Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

41.     In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Apple's stock price, as demonstrated in the following chart:

/     /     /

/     /     /

/     /     /

**Summary of Option Grants and Surrounding Stock Price Performance**

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 10/12/93 | $23.75 | $24.75 | $29.75 | 25.3% |
| 10/13/93 | $24.00 | $23.87 | $31.75 | 32.3% |
| 12/20/93 | $29.50 | $32.25 | $31.50 | 6.8% |
| 1/26/94 | $33.875 | $30.50 | $36.25 | 7.0% |
| 10/3/94 | $33.69 | $35.50 | $39.75 | 18.0% |
| 4/27/95 | $38.25 | $39.00 | $41.00 | 7.2% |
| 4/1/96 | $24.56 | $26.12 | $25.87 | 5.3% |
| 7/11/97 | $13.25 | $14.69 | $16.25 | 21.9% |
| 8/5/97 | $19.75 | $16.56 | $24.44 | 23.7% |
| 12/19/97 | $13.6875 | $15.81 | $18.94 | 38.4% |
| 12/29/97 | $13.125 | $14.13 | $19.50 | 48.6% |
| 2/2/98 | $17.6875 | $18.81 | $19.62 | 10.9% |
| 3/2/99 | $34.625 | $38.31 | $35.50 | 2.5% |
| 12/14/99 | $47.4375 | $48.935 | $50.345 | 6.1% |
| 1/12/00 | $43.5938 | $50.345 | $55.00 | 26.2% |
| 1/17/01 | $16.8125 | $14.88 | $21.62 | 28.6% |
| 10/19/01 | $18.30 | $16.14 | $18.57 | 1.5% |

42.     The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made.  Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Apple stock was lower than the market price on the actual grant dates.  This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

### Dissemination of False Financial Statements

43.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

(a)     violated the terms of the Company's shareholder-approved stock option plans;

1        (b)    violated GAAP by failing to recognize compensation expenses incurred when the

2               improperly backdated options were granted;

3        (c)    violated Section 162(m) by taking tax deductions based on stock option grants that

4               were not payable solely on account of the attainment of one or more performance

5               goals and violated the terms of the Company's shareholder-approved stock option

6               plans; and

7        (d)    produced and disseminated to Apple shareholders and the market false financial

8               statements that improperly recorded and accounted for the backdated option grants.

9        44.    The Company, with the knowledge, approval, and participation of each of the

10  Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form

11  10-K filings:

12        (a)    Form 10-K for the year ended September 30, 1994, filed with the SEC on December

13               13, 1994 and signed by defendant Spindler;

14        (b)    Form 10-K for the year ended September 29, 1995, filed with the SEC on December

15               19, 1995 and signed by defendant Spindler;

16        (c)    Form 10-K for the year ended September 27, 1996, filed with the SEC on December

17               19, 1996 and signed by defendant Anderson;

18        (d)    Form 10-K for the year ended September 26, 1997, filed with the SEC on December

19               5, 1997 and signed by defendants Jobs, Anderson, Campbell, and York;

20        (e)    Form 10-K405 for the year ended September 25, 1998, filed with the SEC on

21               December 23, 1998 and signed by defendants Anderson, Campbell, and York;

22        (f)    Form 10-K for the year ended September 25, 1999, filed with the SEC on December

23               22, 1999 and signed by defendants Anderson, Jobs, Campbell, York, and Drexler;

24        (g)    Form 10-K405 for the year ended September 30, 2000, filed with the SEC on

25               December 14, 2000 and signed by defendants Anderson, Jobs, Campbell, Drexler,

26               Levinson, and York;

27

28

1      (h)    Form 10-K405 for the year ended September 29, 2001, filed with the SEC on

2               December 21, 2001 and signed by defendants Anderson, Jobs, Campbell, Drexler,

3               Levinson, and York; and

4      (i)    Form 10-K for the year ended September 28, 2002, filed with the SEC on December

5               19, 2002 and signed by defendants Anderson, Jobs, Campbell, Drexler, Levinson,

6               and York.

7      45.    Furthermore, from 1994 to 2002, the Company, with the knowledge, approval, and

8 participation of each of the Individual Defendants, for the purpose and with the effect of concealing

9 the improper option backdating, disseminated to shareholders and filed with the SEC annual proxy

10 statements that falsely reported the dates of stock option grants to the Officer Defendants.

11      46.    On June 29, 2006, Apple announced that an internal investigation had discovered

12 irregularities related to the issuance of certain stock option grants made between 1997 and 2001.

13 Specifically, the Company stated:

> Apple today announced that an internal investigation has discovered irregularities related to the issuance of certain stock option grants made between 1997 and 2001. One of the grants in question was to CEO Steve Jobs, but it was subsequently cancelled and resulted in no financial gain to the CEO. A special committee of Apple's outside directors has hired independent counsel to perform an investigation and the company has informed the SEC. Apple executives will refrain from commenting further on this matter until the independent investigation is concluded.
>
> "Apple is a quality company, and we are proactively and transparently disclosing what we have discovered to the SEC," said Apple CEO Steve Jobs. "We are focused on resolving these issues as quickly as possible."

21      47.    Shortly thereafter, on August 3, 2006, the Company announced that, as part of its

22 internal investigation into its past options-granting practices, it had discovered additional evidence

23 of irregularities and that the Company was delaying the filing of its Form 10-Q for the quarter

24 ended July 1, 2006. Moreover, the Company announced that its financial statements for the fiscal

25 years ended 2003 to 2005 should no longer be relied upon, stating that:

> As Apple previously announced, an internal investigation discovered irregularities related to the issuance of certain stock option grants made between 1997 and 2001. A special committee of Apple's outside directors has hired independent counsel to perform an investigation, and the Company

28

has informed the SEC. As a result of the ongoing investigation, the Company will delay the filing of its Form 10-Q for the quarter ended July 1, 2006.

Although the investigation is ongoing, the Company has discovered additional evidence of irregularities. In light of this, management has concluded, and the audit committee of the board of directors agrees, that the Company will likely need to restate its historical financial statements to record non-cash charges for compensation expense relating to past stock option grants. The Company has not determined the amount of such charges, the resulting tax and accounting impact, or which periods may require restatement. Accordingly, the Company today filed a Form 8-K stating that the financial statements and all earnings and press releases and similar communications issued by the Company relating to periods commencing on September 29, 2002 should therefore not be relied upon.

48. On August 11, 2006, the Company announced that it received a letter from NASDAQ due to its failure to timely file its Form 10-K for the quarter ended July 1, 2006, stating that:

Apple announced that the Company will request a hearing before the NASDAQ Listing Qualifications Panel in response to the receipt of a NASDAQ Staff Determination letter today indicating that the Company is not in compliance with the filing requirements for continued listing as set forth in Marketplace Rule 4310(c)(14). As anticipated, the letter was issued in accordance with NASDAQ procedures due to the delayed filing of the Company's Form 10-Q for the quarter ended July 1, 2006. Pending a decision by the Panel, Apple shares will remain listed on the NASDAQ Stock Market.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

49. The Officer Defendants breached their fiduciary duties by:

    (a)   colluding with the Compensation Committee Defendants to backdate stock option grants;

    (b)   colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

    (c)   colluding with the other Individual Defendants to produce and disseminate to Apple shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)   colluding with the other Individual Defendants to file false proxy statements in order to conceal the improper backdating of stock options.

1    50.    The Officer Defendants' foregoing misconduct was not, and could not have been, an

2    exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the

3    Officer Defendants at the expense of the Company.

4    51.    The Compensation Committee Defendants breached their fiduciary duties by:

5         (a)    colluding with the Officer Defendants to backdate stock option grants;

6         (b)    colluding with the Officer Defendants and Audit Committee Defendants to

7              violate GAAP and Section 162(m);

8         (c)    colluding with the other Individual Defendants to produce and disseminate

9              to Apple shareholders and the market false financial statements that

10             improperly recorded and accounted for the backdated option grants and

11             concealed the improper backdating of stock options; and

12        (d)    colluding with the other Individual Defendants to file false proxy statements

13             in order to conceal the improper backdating of stock options.

14   52.    The Compensation Committee Defendants' foregoing misconduct was not, and

15   could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and

16   did, unduly benefit the Officer Defendants at the expense of the Company.

17   53.    The Audit Committee Defendants breached their fiduciary duties by:

18        (a)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

19        (b)    colluding with the other Individual Defendants to produce and disseminate

20             to Apple shareholders and the market false financial statements that

21             improperly recorded and accounted for the backdated option grants and

22             concealed the improper backdating of stock options; and

23        (c)    colluding with the other Individual Defendants to file false proxy statements

24             in order to conceal the improper backdating of stock options.

25   54.    The Audit Committee Defendants' foregoing misconduct was not, and could not

26   have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly

27   benefit the Officer Defendants at the expense of the Company.

28

1    55.    As a direct and proximate result of the Individual Defendants' foregoing breaches of

2    fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

3    limited to, the additional compensation expenses and tax liabilities the Company was required to

4    incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred

5    in connection with the Company's restatement of historical financial results.

6                    **DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

7    56.    Plaintiffs bring this action derivatively in the right and for the benefit of the

8    Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

9    57.    Plaintiffs are owners of Apple common stock and were owners of Apple common

10   stock at all times relevant hereto.

11   58.    Plaintiffs will adequately and fairly represent the interests of the Company and its

12   shareholders in enforcing and prosecuting its rights.

13   59.    As a result of the facts set forth herein, plaintiffs have not made any demand on the

14   Apple Board of Directors to institute this action against the Individual Defendants.  Such demand

15   would be a futile and useless act because the Board is incapable of making an independent and

16   disinterested decision to institute and vigorously prosecute this action.

17   60.    At the time this action was commenced the Board consisted of seven directors:

18   defendants Anderson, Campbell, Drexler, Jobs, Levinson, and York, and director Albert Gore, Jr.

19   The following directors are incapable of independently and disinterestedly considering a demand to

20   commence and vigorously prosecute this action:

21          (a)    Jobs and Anderson, because they are directly interested in the improperly backdated

22                 stock option grants complained of herein;

23          (b)    Campbell, Drexler, Levinson, and York, because as members of the Compensation

24                 Committee they directly participated in and approved the improper backdating of

25                 stock options, as alleged herein.  Moreover, by colluding with the Officer

26                 Defendants and others, as alleged herein, Campbell, Drexler, Levinson, and York

27                 have demonstrated that they are unable or unwilling to act independently of the

28                 Officer Defendants;

AMENDED DERIVATIVE COMPLAINT                                                                          16
48442

(c)     Campbell, Levinson, and York, because as members of the Audit Committee they directly participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Campbell, Levinson and York have demonstrated that they are unable or unwilling to act independently of the Officer Defendants; and

(d)     Anderson, Campbell, Drexler, Jobs, Levinson, and York, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Anderson, Campbell, Drexler, Jobs, Levinson and York have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

61.     Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

<u>**COUNT I**</u>

**AGAINST THE INDIVIDUAL DEFENDANTS**
<u>**FOR BREACH OF FIDUCIARY DUTY**</u>

62.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if set forth fully herein.

63.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

64.     As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

(a)     colluding with the Compensation Committee Defendants to backdate stock option grants;

(b)     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

1        (c)     colluding with the other Individual Defendants to produce and disseminate

2             to Apple shareholders and the market false financial statements that

3             improperly recorded and accounted for the backdated option grants and

4             concealed the improper backdating of stock options; and

5        (d)     colluding with the other Individual Defendants to file false proxy statements

6             in order to conceal the improper backdating of stock options.

7       65.    The Officer Defendants' foregoing misconduct was not, and could not have been, an

8 exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the

9 Officer Defendants at the expense of the Company.

10      66.    As alleged in detail herein, the Compensation Committee Defendants breached their

11 fiduciary duties by:

12        (a)     colluding with the Officer Defendants to backdate stock option grants;

13        (b)     colluding with the Officer Defendants and Audit Committee Defendants to violate

14             GAAP and Section 162(m);

15        (c)     colluding with the other Individual Defendants to produce and disseminate to Apple

16             shareholders and the market false financial statements that improperly recorded and

17             accounted for the backdated option grants and concealed the improper backdating of

18             stock options; and

19        (d)     colluding with the other Individual Defendants to file false proxy statements in

20             order to conceal the improper backdating of stock options.

21      67.    The Compensation Committee Defendants' foregoing misconduct was not, and

22 could not have been, an exercise of good faith business judgment. Rather, it was intended to, and

23 did, unduly benefit the Officer Defendants at the expense of the Company.

24      68.    As alleged in detail herein, the Audit Committee Defendants breached their

25 fiduciary duties by:

26        (a)     colluding with the Officer Defendants to violate GAAP and Section 162(m);

27        (b)     colluding with the other Individual Defendants to produce and disseminate to Apple

28             shareholders and the market false financial statements that improperly recorded and

1     accounted for the backdated option grants and concealed the improper backdating of

2     stock options; and

3     (c)     colluding with the other Individual Defendants to file false proxy statements in

4     order to conceal the improper backdating of stock options.

5     69.     The Audit Committee Defendants' foregoing misconduct was not, and could not

6   have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly

7   benefit the Officer Defendants at the expense of the Company.

8     70.     As a direct and proximate result of the Individual Defendants' foregoing breaches of

9   fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

10   limited to, the additional compensation expenses and tax liabilities the Company was required to

11   incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred

12   in connection with the Company's restatement of historical financial results.

13
<div align="center">

**COUNT II**
</div>

14
<div align="center">

**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES**
</div>

15
<div align="center">

**EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**
</div>

16     71.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if set

17   forth fully herein.

18     72.     Each of the Individual Defendants intentionally or recklessly employed devices,

19   schemes, and artifices to defraud and engaged in acts, practices, and a course of business which

20   operated as a fraud and deceit upon the Company.

21     73.     The Company relied upon the Individual Defendants' fraud in granting the Officer

22   Defendants options to purchase shares of Apple common stock.

23     74.     As a direct and proximate result of the Individual Defendants' fraud the Company

24   has sustained millions of dollars in damages, including, but not limited to, the additional

25   compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to

26   the Company upon exercise of options, and costs and expenses incurred in connection with the

27   Company's restatement of historical financial results.

28   /      /      /

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT

75.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

76.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

77.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiffs demand judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.      Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.      Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.      Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

/       /       /

/       /       /

<div align="center">

1

</div>

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2

   Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than

3

the named parties there is no such interest to report.

4

Dated:  August 23, 2006                    BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

5

6

7
                                           Kathryn Schofield

8
                                           Alan R. Plutzik
                                           L. Timothy Fisher
9
                                           Kathryn A. Schofield
                                           2125 Oak Grove Road, Suite 120
10
                                           Walnut Creek, California  94598
                                           Telephone:  (925) 945-0200
11
                                           Facsimile:  (925) 945-8792

12
                                           SCHIFFRIN & BARROWAY, LLP
                                           Eric L. Zagar
13
                                           Sandra G. Smith
                                           Robin Winchester
14
                                           280 King of Prussia Road
                                           Radnor, PA  19087
15
                                           Telephone:  (610) 667-7706
                                           Facsimile:  (610) 667-7056

16
                                           Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED DERIVATIVE COMPLAINT                                                    21
48442

# **VERIFICATION**

I, Magnus Landare, on behalf of Alecta pensionsförsäkring, ömsesidigt, hereby verify that I have reviewed the Shareholder Derivative Complaint for and on behalf of Nominal defendant Apple Computer Inc. and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: August 21, 2006

Magnus Landare
*Legal Counsel*