**E-Filed 11/19/2007**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE COMPUTER INC., DERIVATIVE LITIGATION | Case Number C 06-4128 JF |
| | ORDER[1] GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND |
| | [re: docket no. 129, 130] |

**I. BACKGROUND**

**1.    Procedural Background**

This derivative action arises from the alleged backdating of stock options by directors and officers of nominal defendant Apple Computer Inc. ("Apple").  The initial complaint was filed on June 30, 2006.  On November 2, 2006, the Court appointed a leadership structure for this litigation in light of the consolidation of a number of cases under the above caption.  On December 18, 2006, Plaintiffs filed a consolidated shareholder derivative complaint.  On January 18, 2007, Plaintiffs moved to amend their complaint.  That request was granted on February 26,

---

[1] This disposition is not designated for publication and may not be cited.

2007, and the operative pleading ("the Amended Complaint") was filed on March 6, 2007.[2]

The Amended Complaint names thirteen defendants ("the Individual Defendants"): Fred D. Anderson; Timothy D. Cook; Steven P. Jobs; Ronald B. Johnson; Mitchell Mandich; Peter Oppenheimer; Jonathan Rubinstein; Avadis Tevanian, Jr.; Nancy Heinen; William V. Campbell; Millard Drexler; Arthur D. Levinson; and Jerome B. York.  Complaint ¶¶ 40-52.  The Amended Complaint refers to Anderson, Cook, Jobs, Johnson, Mandich, Rubinstein, and Tevanian as the "Backdating Defendants;" to Anderson, Cook, Jobs, Johnson, Levinson, Mandich, Oppenheimer, Rubinstein, Tevanian, and York as the "Insider Selling Defendants;" to Campbell, Drexler, Levinson, and York as the "Compensation Committee Defendants;" to Campbell, Levinson, and York as the "Audit Committee Defendants."  *Id.* ¶¶ 53-56.

The Amended Complaint includes ten state-law claims: (1) breach of fiduciary duty by option backdating, against the Backdating, Audit Committee, and Compensation Committee Defendants; (2) breach of fiduciary duty by insider selling, against the Insider Selling Defendants; (3) aiding and abetting breach of fiduciary duty, against the Audit Committee and Compensation Committee Defendants; (4) unjust enrichment, against the Backdating and Insider Selling Defendants; (5) constructive fraud, against the Individual Defendants; (6) abuse of control, against the Individual Defendants; (7) corporate waste and gift, against the Individual Defendants; (8) gross mismanagement, against the Individual Defendants; (9) rescission, against the Individual Defendants; and (10) violation of California Corporate Code.  The Complaint also asserts three federal claims under the Securities Exchange Act: (11) violation of section 14(a); (12) violation of section 10(b); and (13) violation of section 20(a).

On April 20, 2007, the Individual Defendants moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, and Apple moved to dismiss the Amended Complaint for failure to make demand.  Plaintiffs oppose the motions.  The Court heard oral argument on September 7, 2007.

---

[2]  The Amended Complaint bears the title "First Amended Shareholder Derivative Complaint."

1

2.      **Factual Background**

2              Plaintiffs make the following general allegations.  Between fiscal years 1997 and 2002,

3   Apple granted stock options pursuant to at least three different stock option plans: the 1990 Stock

4   Option Plan; the 1997 Employee Stock Option Plan; and the 1998 Executive Officer Stock Plan.

5   *Id.* ¶ 78-79.  The stated purpose of each plan was to attract and retain the best available personnel

6   and to provide incentives to such personnel to promote the success of Apple.  *Id.* ¶ 80.  The plans

7   required that the exercise price for any stock option issued be at least 100% of the fair market

8   value of the common stock on the date of the grant.  *Id.* ¶ 82.

9              According to the Amended Complaint:

10             Defendants, over the course of nearly a decade, abdicated their fiduciary
        obligations, and lied to Apple's public shareholders, by permitting the Board to
11       manipulate the Company's stock option plans to maximize compensation to
        selected executives. As a result, these favored executives improperly and
12       unlawfully amassed a fortune in Apple stock and stock options, and caused the
        Company to overstate its earnings and issue materially false and misleading
13       financial statements since at least fiscal 1997, and to restate its reported financial
        results for fiscal years 2004 through 2006.

14

15   *Id.* ¶ 2.  Apple "never disclosed that the Apple Board permitted Defendants to manipulate the

16   Company's option grants by backdating options and otherwise timing grants to maximize

17   personal benefits."  *Id.* ¶ 4.  Instead, "the Company deliberately concealed from the investing

18   public the fact that the Board permitted such manipulation of the stock grant dates and

19   affirmatively misrepresented that all options were granted at an exercise price equal to the fair

20   market value on the date of grant."  *Id.*

21             On June 29, 2006, Apple issued a press release announcing that its internal investigation

22   had discovered "irregularities related to the issuance of certain stock option grants made between

23   1997 and 2001."  *Id.* ¶ 5.  On July 19, 2006, Apple issued a second press release stating that it did

24   not anticipate a "material adjustment" to financial results.  *Id.* ¶ 6.  However, on August 3, 2006,

25   Apple announced that it had discovered further irregularities that likely would result in financial

26   restatements, and that its financial reports for fiscal years 2003, 2004, and 2005 no longer should

27   be relied upon.  *Id.* ¶ 7.  In its annual report for fiscal year ending September 30, 2006, Apple

28

3

made the following disclosures: the originally assigned grant dates for 6,428 grants on 42 dates were incorrect, causing Apple to recognize a pre-tax stock-based compensation expense of $105 million; Jobs was not only aware of the options backdating but also received some of the grants and recommended some of the dates chosen; and Board minutes were falsified in order to cover up the wrongdoing. *Id.* ¶ 10.  One of the largest grants during this period was made to Jobs, in the form of a grant of options to purchase ten million shares with a grant date of January 12, 2000. *Id.* ¶ 12.  The timing of the grants was such that they occurred either shortly after a drop in the stock price or shortly before an increase.  Plaintiffs argue that: "[t]he timing of these grants could not have been by pure coincidence." *Id.* ¶ 11.

Plaintiffs make the following additional allegations with respect to the Individual Defendants: Anderson served as the Company's Executive Vice President and Chief Financial Officer from April 1996 to June 2004. *Id.* ¶ 40.  Anderson became a member of the Board in June 2004, at which time he left the officer position he previously had held. *Id.* ¶ 40, 150.  Cook is Apple's Chief Operating Officer. *Id.* ¶ 41.  Jobs has been the Chief Executive Officer of Apple since 2000; he was interim Chief Operating Officer from September 1997 to 2000 and has been a director since August 1997. *Id.* at ¶ 42.  Johnson has served as a Senior Vice President of Apple since 2000. *Id.* ¶ 43.  Mandich served as a Senior of Vice President of Apple from February 1997 to October 2000, when he resigned. *Id.* ¶ 44.  Oppenheimer joined Apple in 1996 and now serves as its Senior Vice President and Chief Financial Officer. *Id.* ¶ 45.  Rubinstein served as a Senior Vice President of Apple from February 1997 to May 2004. *Id.* ¶ 46.  Tevanian served as a Senior Vice President of Apple from February 1997 to March 31, 2006, when he resigned without explanation. *Id.* ¶ 47.  Heinen served as General Counsel to Apple from 1997 until May 2006, when she left the company without explanation,  *Id.* ¶ 48; as General Counsel, Heinen reviewed all company financial statements, press releases and/or other filings with the SEC. *Id.*  Campbell has served as a director since August 1997,  *Id.* ¶ 49; he also has served as a member of the Audit Committee since August 1997 and of the Compensation Committee since August 2001. *Id.*  Drexler has served as a director since 1999, including as a member of the

Case No. C 06-4128 JF
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1   Compensation Committee since November 2002. *Id.* ¶ 50.  Levinson has served as a director

2   since fiscal year 2000, including as a member of the Compensation Committee from August

3   2001 through fiscal year 2003 and as a member of the Audit Committee since fiscal year 2000.

4   *Id.* ¶ 51.  York has served as a director since August 1997, as a member of the Compensation

5   Committee from August 2001 through November 2002, and as a member of the Audit

6   Committee since August 1997. *Id.* ¶ 52.

7        Plaintiffs allege that between April 2000 and August 2001, Apple had no compensation

8   committee. *Id.* ¶ 141.  In the absence of such a committee, all such responsibilities belonged to

9   the full Board.  *Id.*  At the time this action was commenced, the Board was comprised of seven

10  directors: Anderson, Campbell, Drexler, Jobs, Levinson, York, and non-defendant Albert Gore,

11  Jr.  When the Complaint was filed, Anderson had been replaced by non-defendant Eric Schmidt.[3]

12  Plaintiffs allege that demand would be futile because Jobs, Anderson, Campbell, Drexler, and

13  York all have adverse interests that render them incapable of fair, unbiased consideration. *Id.* ¶

14  213, 216.

15                              **II.  LEGAL STANDARD**

16  **1.      Motion to Dismiss**

17        For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

18  Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

19  *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

20  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

21  66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

22  ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).  On a motion to

23  dismiss, the Court's review is limited to the face of the complaint and matters judicially

24  noticeable.  *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581

25  (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau*

26  _____

27       [3]  Anderson and Schmidt served together on the Board from August 29, 2006 to
    September 30, 2006.  *Id.* ¶ 215 & n.7.

28

                                      5

*v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995).  However, under the "incorporation by reference" doctrine, the Court also may consider documents that are referenced extensively in the complaint and are accepted by all parties as authentic, even though the documents are not physically attached to the complaint.  *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999).

**2.     Demand Requirement**

A derivative complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.  The existence and satisfaction of a demand requirement is a substantive issue governed by state law.  *See Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991).[4]  When the challenged decision is that of the board in place at the time of the filing of the complaint, failure to make demand may be excused if a plaintiff can raise a reason to doubt that a majority of the board is disinterested or independent or that the challenged acts were the product of the board's valid exercise of business judgment.  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see also Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007) (discussing *Aronson*).  However, "[w]here there is no conscious decision by the corporate board of directors to act or refrain from acting, the business judgment rule has no application."  *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also Ryan*, 918 A.2d at 352 (discussing *Rales*).  In such a situation, demand may be excused only if a plaintiff "can create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Id.* at 353 (citing *Rales*, 634 A.3d 933-34).

---

[4]  California courts follow Delaware law in demand futility cases.  *See Oakland Raiders v. National Football League*, 93 Cal.App.4th 572, 586 n.5 (2001) ("The parties agree that we may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.").

Case No. C 06-4128 JF
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1

## III.  ANALYSIS

2    **1.      Motion to Dismiss for Failure to State a Claim[5]**

3              a.      Claim Eleven: Violation of Section 14(a)

4              Rule 14a-9 provides:

5        No solicitation subject to this regulation shall be made by means of any proxy
         statement, form of proxy, notice of meeting or other communication, written or
6        oral, containing any statement which, at the time and in the light of the
         circumstances under which it is made, is false or misleading with respect to any
7        material fact, or which omits to state any material fact necessary in order to make
         the statements therein not false or misleading or necessary to correct any
8        statement in any earlier communication with respect to the solicitation of a proxy
         for the same meeting or subject matter which has become false or misleading.

9

10   17 C.F.R. § 240.14a-9(a).  To state a claim under Rule 14a-9 and Section 14(a), a plaintiff must

11   allege that: (1) the defendant made a false or misleading statement or omission of material fact;

12   (2) the misstatement or omission was made with the requisite level of culpability; and (3) the

13   statement provided an essential link in the accomplishment of the transaction. *Desaigoudar v.*

14   *Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).

15           The Individual Defendants assert that Plaintiff's Section 14(a) claim is time-barred

16   because it was not filed within one year after discovery of the facts constituting the violation, or

17   within three years following publication of the proxy statement as required by statute.   However,

18   Plaintiffs contend that their 14(a) claim sounds in fraud and therefore is governed by 28 U.S.C. §

19   1658(b), which provides a five-year statute of repose and a two-year statute of limitations for a

20   "private right of action that involves a claim of fraud, deceit, manipulation or contrivance in

21   contravention of a regulatory requirement concerning the securities laws."  *See* Plaintiffs'

22   Consolidated Memorandum of Points and Authorities in Opposition to Defendants' Motion to

23   Dismiss First Amended Shareholder Derivative Complaint ("Opposition") at 44.

24           The Court concludes that § 1658(b) applies to the Section 14(a) claim because such a

25   claim does not sound in fraud.  *See In re Exxon Mobil Corp. Sec. Litig.*, 387 F.Supp.2d 407, 424

26   _____

27           [5] Because the existence of a viable federal claim is a prerequisite to the exercise of its
     subject-matter jurisdiction, the Court addresses the three federal claims first.

28

7

1  (D.N.J. 2005); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F.Supp.2d 189, 196-97 (S.D.N.Y.

2  2003); *In re Zoran Corp. Deriv. Litig.*, 2007 WL 1650948, at *24 (N.D.Cal. June 5, 2007).  As

3  currently pled, Plaintiffs' Section 14(a) claim alleges false statements made more than three years

4  prior to the filing of this action.  *See* Amended Complaint ¶ 277 (alleging false proxy statements

5  from 1997 to 2002).  Accordingly, the claim will be dismissed.  While the Court will grant leave

6  to amend, Plaintiffs should not amend this claim unless they can allege violations of Section

7  14(a) by the publication of proxy statements that occurred on or after July 30, 2003, and unless

8  they commenced the present action within one year after discovery of the violation.

9      In light of the foregoing discussion, the Court need not reach Defendants' challenges to

10  the sufficiency of the allegations.  However, assuming without deciding that the Private

11  Securities Litigation Reform Act ("PSLRA") also applies to Section 14(a) claims, *see e.g. In re*

12  *Textainer Partnership Securities Litig.*, 2005 WL 3801596 (N.D.Cal. March 8, 2005);  *In re*

13  *McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248, 1267 (N.D.Cal. 2000), and that Plaintiffs

14  can assert a claim that is not time-barred, greater specificity likely would strengthen this claim

15  considerably.[6]

16      b.      Claim Twelve: Violation of Section 10(b)

17              i.      Statute of Limitations

18      As noted above, claims of securities fraud are subject to 28 U.S.C. § 1658(b) which

19  provides:

20      [A] private right of action that involves a claim of fraud, deceit, manipulation, or
        contrivance in contravention of a regulatory requirement concerning the securities
21      laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15
        U.S.C. § 78c(a)(47)), may be brought not later than the earlier of –
22              (1) 2 years after the discovery of the facts constituting the
        violation; or
23              (2) 5 years after such violation.

24

25      [6]  This Court has held in another action that the PSLRA has foreclosed the application of
26  the "group published pleading" doctrine, which holds that when false or misleading information
    is conveyed in group published statements, it is reasonable to presume that the statements are the
27  result of the collective actions of the company's officers.  *In re Nextcard, Inc. Sec. Litig.*, No. C
    01-21029, 2006 WL 708663, at *2-3 (N.D.Cal. March 20, 2006).
28

Case No. C 06-4128 JF
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1    *See, e.g.*, *In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1147-48 (C.D.Cal. 2003).  This

2    statute of limitations is not subject to equitable tolling.  *Durning v. Citibank, Int'l*, 990 F.2d

3    1133, 1136-37 (9th Cir. 1993).  Because Plaintiffs' claim under section 10(b) sounds in fraud,

4    section 1658(b) applies.  In light of Plaintiffs' allegation that the practice of backdating options

5    came to light in 2005, the two-year discovery period does not bar the instant action at the

6    pleading stage.  Accordingly, the applicable period for this analysis is the five-year period of

7    repose which commenced on the period after June 30, 2001.[7]

8            The only allegedly backdated option grants within this period are those alleged to have

9    occurred in fiscal year 2002.  *See* Amended Complaint ¶¶ 118-119 (discussing period from

10   October 19, 2001 to December 14, 2001).  However, Plaintiffs also allege that Apple filed a

11   series of false financial statements during the five-year period of repose, raising a question as to

12   whether the filing of such subsequent false financial statements preserves claims for alleged

13   options manipulation that occurred outside the period.  The Court concludes that in light of the

14   statute's focus on the date of the "violation," the statute of limitations must be applied to the

15   specific violations alleged.  To the extent that Plaintiffs' claim is based on the backdating itself,

16   the period of repose began to run on the date that the option grant was made.  *See Durning*, 990

17   F.2d at 1136 (noting that the federal rule is that a cause of action accrues at the completion of the

18   sale of the instrument); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002)

19   (describing the grant of an option as "a purchase or sale" under the Securities Litigation Uniform

20   Standards Act).  Plaintiffs may be able to state a claim under Section 10(b) and Rule 10(b)(5) for

21   dissemination of fraudulent financial statements, but the dates of such statements themselves

22   must fall within the five-year period.[8]  Plaintiffs may not avoid the effect of the statute of

23

24          [7] "A statute of repose is a fixed, statutory cutoff date, usually independent of any
25   variable, such as claimant's awareness of a violation."  *Munoz v. Ashcroft*, 339 F.3d 950, 957
     (9th Cir. 2003) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350,
26   363 (1991)).

27          [8] The Court is skeptical of a continuing wrong theory that would create liability under
28   Section 10(b) upon the issuance of a financial statement that merely fails to correct a prior false

Case No. C 06-4128 JF
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1  limitations by combining allegations of recent financial statements and time-barred option

2  backdating.  Because the claim under section 10(b) as currently pled depends upon such a

3  combination, it will be dismissed.  The Court will grant leave to amend so that Plaintiffs may

4  allege independent wrongful acts that occurred on or after June 30, 2001.

5                    ii.      Sufficiency of the Allegations

6       Section 10(b) makes it unlawful

7       [t]o use or employ, in connection with the purchase or sale of any security
         registered on a national securities exchange or any security not so registered . . .
8       any manipulative or deceptive device or contrivance in contravention of such rules
         and regulations as the Commission may prescribe as necessary or appropriate in
9       the public interest or for the protection of investors.

10  15 U.S.C. § 78j(b).  Rule 10b-5 makes it unlawful for any person to use interstate commerce

11       (a) To employ any device, scheme, or artifice to defraud,
         (b) To make any untrue statement of a material fact or to omit to state a material
12       fact necessary in order to make the statements made, in the light of the
         circumstances under which they were made, not misleading, or
13       (c) To engage in any act, practice, or course of business which operates or would
         operate as a fraud or deceit upon any person, in connection with the purchase or
14       sale of any security.

15  17 C.F.R. § 240.10b-5.  In cases involving publicly-traded securities and purchases or sales in

16  public securities markets, the elements of an action under Section 10(b) and Rule 10b-5 are:  (1)

17  a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale

18  of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Dura Pharmaceuticals, Inc.*

19  *v. Broudo*, 544 U.S. 336, 341-42 (2005).

20       Plaintiffs must meet two heightened pleading standards.  First, Fed. R. Civ. P. 9(b)

21  requires that "the circumstances constituting fraud . . . be stated with particularity."  The Ninth

22  ───────────────

23  statement.  Such a theory appears to approximate the effects of the fraudulent concealment
    doctrine in relation to equitable tolling, a doctrine that does not apply in the Section 10(b)
24  context.

25       *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 CV 1897, 2006 WL 314524 *5 (S.D.N.Y.
    Feb 10, 2006)*, a New York district court opinion cited by Plaintiffs, does not hold to the
26  contrary.  In that case, the Court expressly distinguished a situation in which the alleged
    securities transaction fell within the five-year period from one in which the underlying
27  transaction fell outside the five-year period.  *Dynex*, 2006 WL 314524 at n.4 (citing *Shalam v.
    KPMG, L.L.P.*, No. 05 CV 3602, 2005 WL 2139928 *2 (S.D.N.Y. Sept. 6, 2005)).

28
                                          10

Case No. C 06-4128 JF
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1   Circuit has explained that a "plaintiff must include statements regarding the time, place, and

2   nature of the alleged fraudulent activities, and that mere conclusory allegations of fraud are

3   insufficient." *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994).  A

4   plaintiff asserting fraud "must set forth an explanation as to why the statement or omission

5   complained of was false or misleading." *Id.*  (internal quotation marks omitted); *see also Yourish*

6   *v. California Amplifier*, 191 F.3d 983, 992-93 (9th Cir. 1999).

7       Second, the Private Securities Litigation Reform Act ("PSLRA") raises the pleading

8   standard further:

9       (1) Misleading statements and omissions
    In any private action arising under this chapter in which the plaintiff alleges that
10   the defendant–
    (A) made an untrue statement of a material fact; or
11   (B) omitted to state a material fact necessary in order to make the statements
    made, in the light of the circumstances in which they were made, not misleading;
12   the complaint shall specify each statement alleged to have been misleading, the
    reason or reasons why the statement is misleading, and, if an allegation regarding
13   the statement or omission is made on information and belief, the complaint shall
    state with particularity all facts on which that belief is formed.

14
    (2) Required state of mind
15   In any private action arising under this chapter in which the plaintiff may recover
    money damages only on proof that the defendant acted with a particular state of
16   mind, the complaint shall, with respect to each act or omission alleged to violate
    this chapter, state with particularity facts giving rise to a strong inference that the
17   defendant acted with the required state of mind.

18   15 U.S.C. § 78u-4b(1)-(2).

19       In connection with their 10(b) claim Plaintiffs allege the following:

20       Defendants had actual knowledge of the misrepresentations and omissions of
    material facts set forth herein, or acted with reckless disregard for the truth in that
21   they failed to ascertain and to disclose such facts, even though such facts were
    available to them. Defendants' material misrepresentations and/or omissions were
22   done knowingly or recklessly and for the purpose and effect of concealing the
    truth.

23
    Amended Complaint ¶ 286.  This allegation is insufficient to create the strong inference of
24
    scienter required by the PSLRA, even when it is viewed in light of the factual allegations found
25
    elsewhere in the Amended Complaint.  Rather, Plaintiffs' pleading in its present form is
26
    characterized by conclusory, general, and non-individualized assertions as to all of the
27
    Defendants.  The only individualized allegation is that Apple found in the course of its
28

11

1   investigation that Jobs was aware of the backdating.  *See* Amended Complaint ¶ 173.  In order to

2   meet the requirements of the PSLRA, Plaintiffs must provide more detailed allegations giving

3   rise to a stronger inference of scienter on the part of each defendant.[9]

4                   iii.    Claim Thirteen: Violation of Section 20(a)

5         To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of

6   federal securities laws; and (2) that the defendant exercised actual power or control over the

7   primary violator.  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  The

8   statute of limitations analysis pertaining to the Section 10(b) claim applies equally to the Section

9   20(a) claim.  *See, e.g.*, *In re Heritage Bond Litigation*, 289 F. Supp. 2d at 1148.  Because

10  Plaintiffs have failed to state a claim for a primary violation of the securities laws, this claim also

11  will be dismissed with leave to amend.

12          c.      Claims Under State Law

13        As discussed above, Plaintiffs have yet to state a federal claim that is not time-barred and

14

15          [9]  Plaintiffs also include allegations of scheme liability.  *See, e.g.*, Amended Complaint ¶¶

16  282-83, 285.  The issue of whether a scheme liability claim may be brought pursuant to § 10(b)
    was argued before the Supreme Court on October 9, 2007 in *Stoneridge Inv. Partners, LLC v.*

17  *Scientific-Atlantic, Inc.*, No. 05-1974.  No opinion has been issued in that case to date.  The
    Ninth Circuit has explained that:

18

19          Participation in a fraudulent transaction by itself, however, is insufficient to
            qualify the defendant as a "primary violator" if the deceptive nature of the

20          transaction or scheme was not an intended result, at least in part, of the
            defendant's own conduct. We hold that to be liable as a primary violator of §

21          10(b) for participation in a "scheme to defraud," the defendant must have engaged
            in conduct that had the principal purpose and effect of creating a false appearance

22          of fact in furtherance of the scheme. It is not enough that a *transaction* in which a
            defendant was involved had a deceptive purpose and effect; the defendant's *own*

23          *conduct* contributing to the transaction or overall scheme must have had a
            deceptive purpose and effect.

24

25  *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006).  Because the Amended

26  Complaint contains insufficient allegations that the various defendants' contributions to the
    overall scheme had a deceptive purpose and effect, the scheme allegations also will be dismissed.

27  While Plaintiffs may include such allegations of scheme liability in an amended complaint, the
    Court has considerable doubt that Plaintiffs will be able to state a claim for scheme liability.

28

                                            12

that meets the heightened pleading requirements of federal law.  Because the Court would lack jurisdiction to entertain Plaintiffs' state law claims in the absence of a valid federal claim, the Court need not address the sufficiency of the state law claims at this time.  However, Defendants appear to raise a number of valid arguments with respect to these claims, and Plaintiffs may wish to amend the claims accordingly.

**2.      Motion to Dismiss for Failure to Make Demand**

Apple also moves to dismiss the Amended Complaint for failure to make demand.  It argues that demand is not excused because Plaintiffs' allegations do not show that a majority of the Board faces a substantial risk of liability or that the Board's independence otherwise has been compromised.  In light of its conclusion that Plaintiffs have yet to state a claim for violation of federal law, the Court need not address this aspect of Defendants' motion at this time.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Defendants' motion to dismiss for failure to state a claim is GRANTED with leave to amend, and Defendants' motion to dismiss for failure to make demand is DEFERRED.  Any amended pleading shall be filed within thirty (30) days of the date of this order.

DATED: November 19, 2007.

_____
JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Genevieve A. Cox                 Genevieve.Cox@mto.com, sophia.leshin@mto.com

Travis E. Downs , III            travisd@lerachlaw.com, e_file_sd@lerachlaw.com

Yohance Claude Edwards           yohance.edwards@mto.com, milvi.giesinger@mto.com

Juli E. Farris                   jfarris@kellerrohrback.com, bleland@kellerrohrback.com,
                                 mbates@kellerrohrback.com

Howard D. Finkelstein            fk@classactionlaw.com

David Malcolm Furbush            dfurbush@omm.com, dedmondson@omm.com,
                                 dshah@omm.com, lnewell@omm.com, vtran@omm.com

Sarah A. Good                    sgood@howardrice.com, bhastings@howardrice.com

Jason Mark Habermeyer            jhabermeyer@howardrice.com, ccamp@howardrice.com

Sean M. Handler , Esq            ecf_filings@sbtklaw.com, der_filings@sbtklaw.com.com

Willem F. Jonckheer              wjonckheer@schubert-reed.com

Jeffrey R. Krinsk               jrk@classactionlaw.com, fk@classactionlaw.com

Elizabeth A. Leland              bleland@kellerrohrback.com, chopkins@kellerrohrback.com,
                                 dwilcher@kellerrohrback.com

Ronald Lovitt                    rl@lh-sf.com, davies@lh-sf.com

Mark Cotten Molumphy             mmolumphy@cpmlegal.com, jacosta@cpmlegal.com,
                                 oszeto@cpmlegal.com, pskahan@cpmlegal.com

Jerry E. Nastari                 jen@coreylaw.com, deg@coreylaw.com

Alan R Plutzik                   aplutzik@bramsonplutzik.com

Juden Justice Reed               jreed@schubert-reed.com, akeng@schubert-reed.com,
                                 plee@schubert-reed.com, rschubert@schubert-reed.com

George A. Riley                  griley@omm.com, cchiu@omm.com, mhenderson@omm.com

Jerome Cary Roth                 Jerome.Roth@mto.com, susan.ahmadi@mto.com

Lynn Lincoln Sarko               lsarko@kellerrohrback.com

Kathryn Anne Schofield           kschofield@bramsonplutzik.com,
                                 moldenburg@bramsonplutzik.com

Robert C. Schubert               rschubert@schubert-reed.com

Emanuel Shachmurove              mshachmurove@sbtklaw.com

| | | |
|---|---|---|
| 1 | Luann Loraine Simmons | lsimmons@omm.com, cchiu@omm.com, cholsome@omm.com, smeblin@omm.com |
| 2 | | |
| 3 | Kelly L Sommerfeld | ksommerfeld@cpsmlaw.com, jacosta@cpsmlaw.com |
| 4 | John W. Spiegel | spiegeljw@mto.com, berryjm@mto.com, finchac@mto.com, giesingermj@mto.com, stonelc@mto.com, voigtsam@mto.com |
| 5 | Mary Sikra Thomas | mthomas@gelaw.com, memaryt@verizon.net |
| 6 | Shawn A. Williams | shawnw@lerachlaw.com, aelishb@lerachlaw.com, cwood@lerachlaw.com, e_file_sd@lerachlaw.com, |
| 7 | | e_file_sf@lerachlaw.com, jdavis@lerachlaw.com, moniquew@lerachlaw.com, travisd@lerachlaw.com |
| 8 | | |
| 9 | Elizabeth B. Wydra | elizabethwydra@quinnemanuel.com, veronicavelilla@quinnemanuel.com |
| 10 | Scott Justin Yundt | syundt@mandhllp.com, aarnall@mandhllp.com, dhoward@mandhllp.com, gmurray@mandhllp.com |
| 11 | | |
| 12 | Eric L. Zagar | ezagar@sbtklaw.com, der_filings@sbtklaw.com, kpopovich@sbtklaw.com, rwinchester@sbtklaw.com |

13  Notice has been delivered by other means to:

14  Sarina M. Hinson
    The Garcia Law Firm
15  1 World Trade Center
    Suite 1950
16  Long Beach, CA 90831

17  Carl Holliday Moor
    Munger Tolles & Olson LLP
18  355 S Grand Ave 35FL
    Los Angeles, CA 90071-1560
19
    Richard S. Schiffrin
20  Schiffrin & Barroway LLP
    280 King of Prussia
21  Radnor, PA 19087

22

23

24

25

26

27

28

Case No. C 06-4128 JF
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)