**E-Filed 11/5/2008**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE COMPUTER, INC. DERIVATIVE LITIGATION | Case Number C 06-4128 JF (HRL) <br><br> ORDER[1] (1) GRANTING FINAL APPROVAL OF SETTLEMENT; (2) APPROVING AGREEMENT FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES; AND (3) ADDRESSING SHAREHOLDER OBJECTIONS <br><br> [re: docket no. 222] |

On June 29, 2006, Apple Computer, Inc. ("Apple") issued a press release stating that its management had discovered irregularities regarding the issuance of certain stock option grants. Subsequently, sixteen shareholder derivative suits were filed in this Court; the cases subsequently were consolidated under the above caption. Several additional shareholder derivative actions were filed contemporaneously in the California Superior Court; these suits similarly were consolidated into a single action that was stayed pending the resolution of the instant action. On December 18, 2006, Plaintiffs filed a consolidated shareholder complaint. That complaint

---

[1] This disposition is not designated for publication and may not be cited.

alleged, *inter alia*, that certain Apple executives had engaged in an illegal stock option backdating scheme. Following further public disclosures by Apple, Plaintiffs filed a first amended complaint. Defendants filed a motion to dismiss, which this Court granted with leave to amend. Plaintiffs then filed the operative second amended complaint, which Defendants again moved to dismiss. Prior to the hearing on Defendants' second motion to dismiss, the parties reached an agreement in principle to settle.

On September 4, 2008, the parties filed a joint motion for preliminary approval of the settlement. A hearing regarding the proposed settlement was conducted on September 8, 2008, at which time the Court issued an order granting preliminary approval. The settlement provides for a cash payment of $14 million to Apple, to be made by the insurance carriers for the named individual Defendants. The settlement also requires that Apple institute multiple corporate governance reforms designed to prevent future wrongdoing, whether intentional or accidental.

Prior to entering into the settlement agreement, Apple had announced an $84 million restatement of earnings, of which $58 million was attributable to backdated options granted to Apple executives. The $14 million payment to Apple pursuant to the settlement agreement thus represents twenty-five percent of the value of the options granted to the executives. In addition, the $14 million payment is approximately eighty-four percent of the value of grants that actually were exercised (and which already have not been disgorged) – an amount the parties represent to be $16.6 million.[2] As part of the settlement, Apple will pay a total of $8.85 million in attorneys' fees to Plaintiffs' counsel in the instant action and the state court action.

As required by the preliminary approval order, the parties sent written notice to all Apple shareholders of record. Plaintiffs then moved for final approval of the settlement, and on October 31, 2008, the Court conducted a final approval hearing. After review and consideration of the documents filed in connection with the motion, the objections of certain shareholders to the terms of the settlement, and the oral arguments presented at the October 31 hearing, the Court

---

[2] Defendants contend that this figure represents the maximum amount of potential damages.

finds and concludes as follows:

**(1)** The proposed settlement is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995). The Ninth Circuit has held that "[a]ssessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The settlement as a whole must be fair and reasonable; the fairness of certain components will not save deficient settlement terms. *Id*.

The principal factor to consider in this case is the benefit to Apple as compared to the risks posed by derivative litigation. *See Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) ("The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."). The settlement provides for a cash payment of $14 million to Apple and a payment of $8.85 million in attorneys' fees and costs. As Apple is responsible for paying the attorneys' fees, the net payment to Apple is $5.15 million. This net payment is approximately eleven percent of the value of the options granted to Apple executives and thirty-one percent of the value of the grants actually exercised.

Apple's net cash recovery exceeds the average recovery in shareholder derivative litigation. *See* Laura E. Simmons & Ellen M. Ryan, *Securities Class Action Settlements, 2006 Review and Analysis* 6 (Cornerstone Research 2007) (settlements as a percentage of "estimated damages" averaged 2.4% in 2006); Stephanie Plancich, Brian Saxton & Svetlana Starykh, *Recent Trends in Shareholder Class Action: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High* 14 (NERA Economic Consulting 2007) (median ratio of settlements to investor losses in 2007 was 2.4%). Moreover, the settlement requires that Apple adopt multiple corporate governance reforms. *See* Pls. Br. 10-11. These reforms are designed to

3
Case No. C 06-4128 JF
ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, ETC.
(JFLC1)

prevent future improperly backdated options as well as other acts of corporate misbehavior. Plaintiffs retained Professor David Larcker, Co-Director of the Rock Center for Corporate Governance at Stanford University, to help shape these governance reforms during the settlement negotiations. Professor Larcker has concluded that the value of the reforms could increase Apple's market value by an amount "well in excess of several hundred million dollars." Larcker Decl. ¶35. While this valuation may be optimistic, the Court is satisfied that the corporate governance reforms do confer a significant value upon Apple. At the very least, potential buyers of Apple stock likely will view such reforms as an additional reason to purchase the stock.

"[T]he risk, expense, complexity, and likely duration of further litigation" are additional factors that should be considered in determining the fairness of a proposed settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In the instant case, Plaintiffs' success was by no means assured. The first amended complaint was dismissed, and there is some doubt as to whether the second amended complaint or any other amended pleading would have survived a subsequent motion to dismiss. The Court concludes that the benefits to Apple are reasonable in light of the risks present in the instant case and in derivative litigation generally. *See Pac. Enters.*, 47 F.3d at 378 ("derivative lawsuits are rarely successful."). The parties also have expended a substantial amount of time on the case. As of September 4, 2008, Plaintiffs' counsel had expended over 10,000 hours on this matter. If the instant action were to proceed, it is likely that all of the parties, including Apple, would incur significant additional expenses.

The parties also have presented evidence that the negotiations were conducted at arms' length. The Honorable Edward A. Infante (Ret.), a former magistrate judge of this Court, served as a mediator throughout the litigation and has submitted a declaration in which he stated that "the settlement was negotiated by the parties at arms' length, carefully and in good faith." Infante Decl. ¶6. Judge Infante's participation weighs considerably against any inference of a collusive settlement. *See In re AOL Time Warner S'holder Deriv. Litig.*, No. 02 Civ. 6302, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)) ("a court-appointed mediator's involvement in…settlement negotiations helps

to ensure that the proceedings were free of collusion and undue pressure"). In addition, the involvement of multiple counsel from different firms suggests a lack of collusion. *See Gay v. Waiters' & Dairy Lunchmen's Union Local No. 30*, 86 F.R.D. 500, 503 n.7 (N.D. Cal. 1980). Finally, the parties have presented evidence that the proposed award of attorneys' fees was negotiated separately from the initial $14 million payment. The parties first agreed on a gross settlement of $14 million and the implementation of the new corporate governance rules, and only then did they allocate the attorneys' fees. A court should refrain from substituting its own value for a properly bargained–for agreement. *See id.*

A final factor to consider in evaluating a proposed derivative settlement is shareholder opposition. *See Hanlon*, 150 F.3d at 1026. Here, although more than 1.4 million notices were mailed to shareholders, only four timely objections were received. As addressed in further detail below, the Court concludes that these objections, while articulate and well-reasoned, do not outweigh the net benefit of the settlement to Apple.

**(2)** The fee award is appropriate in light of the time expended by counsel and the value conferred upon Apple. Under the terms of the settlement, $7.3 million in fees plus $300,000 in expenses will be paid to Plaintiffs' counsel in the instant federal action, and $1.2 million in fees plus $50,000 in expenses will be paid to Plaintiffs' counsel in the pending state action. Thus, the total amount of fees and expenses payable to Plaintiffs' counsel in both actions is $8.85 million, which equals sixty-three percent of the cash payment to Apple.

The Ninth Circuit has held that an award of twenty-five percent represents a reasonable "benchmark" amount for attorneys' fees. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). This benchmark percentage then may be "adjusted upward or downward to account for any unusual circumstances." *Id*. A percentage-based calculation also may be replaced by the "lodestar" method, which multiplies the total amount of hours spent on the case by a reasonable hourly rate, "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

5
Case No. C 06-4128 JF
ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, ETC.
(JFLC1)

In the instant case, a twenty-five percent award would equal $3.5 million. The primary justifications proffered for an amount that is more than double a benchmark award are (1) the complexity of the case and (2) the value of the corporate governance reforms. As discussed previously, the instant action is complex, and the success of Plaintiffs' case was by no means assured. For these reasons alone, some upward adjustment from a benchmark award is warranted. In addition, as detailed by Dr. Larcker the corporate governance reforms do confer a significant economic benefit to Apple. Accordingly, the Court finds that the proposed fee award is reasonable.[3]

**(3)**   The objections filed with the Court do not warrant disapproval of the settlement. As noted above, only four objections were received. In essence, all of the objections focus on the magnitude of the fee award. Shareholders Michael L. Happe and his minor daughter objected to the amount of attorneys' fees as unreasonable, regardless of any proportional relationship to the overall value of the settlement. Shareholder Daniel D. Slosberg objected to the settlement on several grounds, including the inadequacy of a $14 million payment in light of the $84 million restatement and the fact that individual Defendants may retain shares received through improperly backdated options, the value of which may be increased by the settlement. Shareholders H. Watkins Ellerson and Veronica Morrissette both objected to the amount of the attorneys' fees as they relate to the total award to Apple, and argued respectively that either a twenty-five percent or a twenty percent award would be appropriate. Ms. Morrissette, who also made an oral presentation at the hearing, made an effective argument that Professor Larcker may have overstated the value of the corporate governance reforms to Apple.[4]

---

[3] For example, if the corporate governance reforms were worth only $10 million, the total value of the settlement to Apple would be $24 million. Under such a scenario, the percentage recovery for Plaintiffs' counsel would be approximately thirty-seven percent, which is reasonable under the present circumstances.

[4] The Court has considered whether to appoint its own expert pursuant to Fed. R. Evid. 703 to provide additional perspective with respect to Dr. Larcker's opinion. However, in light of Dr. Larcker's substantial experience with respect to corporate governance issues and the relative costs and benefits of delaying resolution of the instant proceedings and causing all parties to incur additional expense, the Court concludes that such an appointment is unnecessary.

1  As discussed previously, the Court finds that the amount of the settlement is reasonable in
2 light of the potential liability, and that the corporate governance reforms confer a financial
3 benefit upon Apple.  As noted *supra*, even if the corporate governance reforms ultimately confer
4 a relatively small economic value to Apple, the attorneys' fees award would be reasonable in
5 light of the value of Apple's total recovery.  Accordingly, the Court declines to adjust the fee
6 award.

**ORDER**

8  Good cause therefor appearing, the settlement and the proposed order jointly submitted
9 by the parties will be approved.

11 IT IS SO ORDERED.

13 DATED: November 5, 2008

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-4128 JF
ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, ETC.
(JFLC1)

1   This Order has been served upon the following persons:

2   Alan R Plutzik     aplutzik@bramsonplutzik.com

3   David Malcolm Furbush     david.furbush@pillsburylaw.com, frances.ceccacci@pillsburylaw.com

4

5   Douglas R. Young     dyoung@fbm.com, calendar@fbm.com

6   Elizabeth A. Leland     bleland@kellerrohrback.com, chopkins@kellerrohrback.com, dwilcher@kellerrohrback.com

7   Elizabeth B. Wydra     elizabethwydra@quinnemanuel.com

8   Emanuel Shachmurove     mshachmurove@sbtklaw.com

9   Eric L. Zagar     ezagar@sbtklaw.com, der_filings@sbtklaw.com, kpopovich@sbtklaw.com, rwinchester@sbtklaw.com

10

11  Genevieve A. Cox     Genevieve.Cox@mto.com, sophia.leshin@mto.com

12  George A. Riley     griley@omm.com, cchiu@omm.com, mhenderson@omm.com

13  Howard D. Finkelstein     fk@classactionlaw.com

14  James Christopher Magid     jmagid@bermanesq.com, stuiasosopo@bermanesq.com

15  Jason Mark Habermeyer     jhabermeyer@howardrice.com, ccamp@howardrice.com

16  Jeffrey R. Krinsk     jrk@classactionlaw.com, fk@classactionlaw.com

17  Jerome Cary Roth     Jerome.Roth@mto.com, susan.ahmadi@mto.com

18  Jerry E. Nastari     jen@coreylaw.com, deg@coreylaw.com

19  Jin H. Kim     jkim@hrice.com

20  John Mark Potter     johnpotter@quinnemanuel.com, amberburns@quinnemanuel.com, westonreid@quinnemanuel.com

21  John W. Spiegel     spiegeljw@mto.com, berryjm@mto.com, finchac@mto.com, giesingermj@mto.com, stonelc@mto.com, voigtsam@mto.com

22

23  Juli E. Farris     jfarris@kellerrohrback.com, bleland@kellerrohrback.com, dau@kellerrohrback.com, mbates@kellerrohrback.com, scramer@kellerrohrback.com

24  Kathryn Anne Schofield     kschofield@bramsonplutzik.com, moldenburg@bramsonplutzik.com

25  Kelly L Sommerfeld     ksommerfeld@cpsmlaw.com, jacosta@cpsmlaw.com

26  Luann Loraine Simmons     lsimmons@omm.com, cchiu@omm.com, cholsome@omm.com, smeblin@omm.com

27

28  Lynn Lincoln Sarko     lsarko@kellerrohrback.com

Case No. C 06-4128 JF
ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, ETC.
(JFLC1)

1  Mark Cotten Molumphy     mmolumphy@cpmlegal.com, bgoldman@cpmlegal.com,
   jacosta@cpmlegal.com, mmetzger@cpmlegal.com, oszeto@cpmlegal.com,
2  pskahan@cpmlegal.com

3  Mary Sikra Thomas     mthomas@gelaw.com, memaryt@verizon.net

4  Robert C. Schubert     rschubert@schubertlawfirm.com

5  Ronald Lovitt     rl@lh-sf.com, davies@lh-sf.com

6  Sarah A. Good     sgood@howardrice.com, bhastings@howardrice.com

7  Scott Justin Yundt     syundt@murrayhowardlaw.com, aarnall@murrayhowardlaw.com,
   aromero@murrayhowardlaw.com, dhoward@murrayhowardlaw.com,
8  gmurray@murrayhowardlaw.com

9  Sean M. Handler , Esq     ecf_filings@sbtklaw.com

10 Shawn A. Williams     shawnw@csgrr.com, aelishb@csgrr.com, cwood@csgrr.com,
   e_file_sd@csgrr.com, e_file_sf@csgrr.com, travisd@csgrr.com
11
   Travis E. Downs , III     travisd@csgrr.com, e_file_sd@csgrr.com
12
   Willem F. Jonckheer     wjonckheer@schubert-reed.com
13
   Yohance Claude Edwards     yohance.edwards@mto.com, milvi.giesinger@mto.com
14
   Carl Holliday Moor
15 Munger Tolles & Olson LLP
   355 S Grand Ave 35FL
16 Los Angeles, CA 90071-1560

17 Richard S. Schiffrin
   Schiffrin & Barroway LLP
18 280 King of Prussia
   Radnor, PA 19087
19
   Sarina M. Hinson
20 The Garcia Law Firm
   1 World Trade Center
21 Suite 1950
   Long Beach, CA 90831
22

23

24

25

26

27

28

9
Case No. C 06-4128 JF
ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, ETC.
(JFLC1)